Our second case for this morning is Whitfield v. Howard. We will hear first from Amicus Curiae, Mr. Chesbrough, Mr. Chesbrough. Thank you. May it please the court. The judicial court in this case found that Mr. Whitfield had adequately pled the First Amendment retaliation claim involving three disciplinary proceedings while he was incarcerated. Now we wouldn't be here if as part of the retaliation the correctional officials had only segregated him or take away recreational privileges or done relatively minor things. The reason we're here is that in addition to other sanctions, the correctional officials ultimately took away good time credits. And that triggered the rule of Edwards v. Baselot, which required Mr. Whitfield, while in custody, clearly, to pursue all available state remedies and federal habeas remedies before he could sue under Section 1983. So the question now is, after he is no longer in custody, can he sue under Section 1983? So let me ask you this question. Obviously we're going to be talking about this court's decision in Byrd, but Mr. Whitfield isn't just sitting around watching TV all this time. He, for these three reports, 2002, 2003, and 2007, he engages in a fair amount of litigation, although he never quite hits what the Illinois courts and other courts think he should have done. And he eventually winds up in this federal habeas corpus action that becomes moot upon, I presume upon, not just his release, but upon the So I'm interested in, I guess, two things. One thing that concerns me about the theory that you've proposed, which is kind of your straightforward, once you're out of custody, heck, has no further force, because as we put it in the Byrd case, people could skirt the heck bar, they said, by simply waiting. You could wind up with extremely stale claims being brought many, many years after whatever the matter being complained about had occurred. And that strikes me as a very troublesome rule. So I want to know why that's not a problem from your point of How diligent do you think Mr. Whitfield was? Because if you read Byrd as really just imposing a diligence requirement, you've got to be trying, at least, and not skirting the heck bar. Can Mr. Whitfield pass a test like that? On the second question, we haven't briefed it, of course, but my impression, since I don't speak for Mr. Whitfield, I can just give you my own personal view. You can speak hypothetically. A prisoner who has been trying, I mean, habeas is quite the minefield, right? It's not always obvious what people are supposed to do. So he brings mandamus actions, he brings state habeas actions, he asks for conversion. He never quite, as I said, never quite hits it right. It seems to me that even considering he's a pro se litigant, although a pro se litigant, he had enough time regarding 2001, 2002, 2007, enough time to go through the state process and get a federal habeas petition on file before he was released in 2011. And he was trying. I mean, I think that's the difference. The prisoner who just sort of stores up all of his grievances over the years in prison and then files one massive 1983 action when he leaves is the person we were worrying about, I think. Absolutely. So in terms of this, there's no hint in my mind that he is trying to circumvent the idea that he's supposed to seek habeas relief while incarcerated. He's certainly doing far more than the average prisoner would ever even try to contemplate. But in terms of the number of years involved, in theory, he could have exhausted everything. So if you want to be very strict under Byrd, he might be out of luck. But if you just want to view Byrd as preventing blatant circumvention and prevent prisoners from sandbagging, clearly he would meet that test. But my more fundamental objection to this whole analysis of exhaustion is that it's contrary to the Heck decision, which made very clear that they are not engrafting exhaustion on Section 1983. They're saying nothing accrues. So my view is that if Heck were viewed as holding, as this court viewed it as holding in 1997 in the rule that you cannot sue because your claim did not accrue. Basically, no matter how hard he tried to exhaust, and even if he had fully exhausted, if he did not succeed in invalidating the disciplinary proceedings and getting the good time credits restored, then he can't sue under Heck. So let's look at this, take it apart a little bit. So Heck itself says if the theory of the 1983 action you're bringing would also mean that the Heck is the underlying conviction, Edwards against Balasag takes that over to the prison disciplinary proceeding, would mean that the conviction is invalid or the disciplinary action is invalid. So the court says we don't want to do that because there are special requirements for habeas corpus, and since there is considerable overlap between 1983 and 2254, we're going to force you into the habeas pattern. So you have to do that, and only if you can get the conviction set aside, only upon that happening does the 1983 action accrue. But they then, whether you want to look at putting opinions together in Spencer against This isn't going to work for everybody because there's a jurisdictional requirement in habeas that you be in custody. So if the custody is over and done with, then there's nothing left to protect for habeas. So go ahead and bring your 1983 action, seems to be where we were until the concern about lack of diligence or whatever you want to call it, the concern expressed in Byrd comes up. I agree. I agree. Byrd was influenced by the other circuits, particularly the Sixth and Ninth Circuits that decided that they wouldn't draft an exhaustion requirement. What they do is they take Heck. But it's an exhaustion requirement, not a success requirement, as I understand it. I agree, but my view is that you can't, that can't be justified under either Heck or under Spencer because Heck is an accrual rule. So you just have to succeed. It doesn't matter how hard you try or even if you exhaust. Whereas what Spencer does is it doesn't create an exception to Heck. It doesn't say, well, generally you have to succeed to accrue, but we'll say you don't have to succeed if you have a disciplinary sanction and you tried really hard. What Spencer does is it enacts a completely different rationale for the result in Heck, which is that if there's no jurisdictional collision, if the person is out of custody, then we just ignore habeas. That is the last, we rely of course on the last sentence of Simpson case which relied on DeWalt and which the state of Illinois cited on page 20 of its bird brief in conceding that Heck doesn't apply once release occurs. Judge Eastbrook said that Heck is limited to prisoners who are in custody and are therefore able to seek collateral relief. So there's a very clear bright line rule under Spencer, which this court followed for more than a decade, that says we're not engaging in a policy analysis of whether to require exhaustion. We're simply deciding, okay, this prisoner, when he filed under Section 1983, was not in custody and that's a simple answer. Okay, so how about this? Suppose that's all right. Suppose the best understanding of all of these cases, Heck, Spencer, Edwards, what this court has said is what you just said. So the only thing Heck is about is preserving habeas corpus during that period of time that it's available, but the conflict isn't there once the person is out, so you can just go ahead and bring the 1983 action. What implications, if any, do you see for the statute of limitations for these cases, if that's the rule? If that's the rule, it seems that even though in general Illinois doesn't regard imprisonment as a legal disability, here under Spencer the idea is that while you're in custody you can't sue under Section 1983. I think that's a federal legal disability that would fall under the general legal disability provision of tolling under Illinois law. So the idea is once the person is no longer in custody, the statute starts running, and here under the two-year statute, Mr. Whitfield filed near the end of the two years. So I think that's how it would work. However, I think you could avoid stale claims if you... Yeah, so how do you do that? That's my biggest issue here. Right, okay. In general, when you're talking about attacks on a conviction, you're not going to have a problem because you have issued preclusion, you have Rooker-Feldman. You're just not going to have a situation where people are going to challenge convictions going years back. As far as disciplinary sanctions, it's available to the state to waive the heck claim, because it's a waivable defense. If they don't want to wait years until the person is released, they can simply say, we're going to waive it. We want to just get this all over with now. So that would be an easy way to deal with staleness of claims involving prison discipline. But in general, our view is that these are policy arguments about whether to require exhaustion that are really for Congress, because Congress did amend Section 1983 to deal with the special problems of prisoner claims. That they did. So I think I understand why all the circuits that preceded Byrd did what they did, concerned about circumvention of the Habeas Statute. But I don't think you can sustain that under Heck, which says that we're not talking about exhaustion, we're talking about accrual. And I don't think you can sustain it under Spencer. So I think you should follow the latest considered dictum, which is Spencer. And even though there are some policy concerns I admit, on the fringes with people trying to abuse the process. I'd like to reserve any time in my time. Certainly, you may do that. Thank you. Thank you. Mr. Turner. Good morning, Your Honors. May it please the Court. I am Illinois Assistant Attorney General Christopher Turner, here on behalf of the defendants at Belize, the employees of the Illinois Department of Corrections. The District Court correctly granted summary judgment in favor of the defendants, because Whitfield's Section 1983 claims are barred under Heck-Free-Humphrey's favorable termination rule. And so it should be affirmed. So let me continue the conversation I was having with Mr. Chesbrough. Your reading of Byrd is a very broad reading. What we say in Byrd, and I have it in front of me, I'm sure you've memorized it, is Heck applies, but what does it mean to say Heck applies, I guess is the first thing. Because we know that the use of habeas corpus, once habeas corpus is jurisdictionally impossible, as in the Spencer situation. And this Court says the concerns for those individuals who were precluded by a legal impediment from bringing in action for collateral relief. So there's some space where there's no favorable termination requirement. And then some other space where maybe there's a favorable termination. The situation in Byrd was of a person who did nothing. And that is most certainly not Mr. Whitfield. Mr. Whitfield is busily litigating all sorts of things, trying to bring his complaints before the courts. He's pro se. He fails. He's constantly choosing the wrong procedural mechanism, or he doesn't realize he has to go to the Illinois Supreme Court in one instance. Edwards against Balasag later makes clear that you do have to do that. So I guess I'm concerned about overdoing the favorable termination rule for somebody who has been diligent and trying to bring claims before the various tribunals that the state makes available. But the clock runs out on him, right? He's released. And now all of a sudden he's in the situation where he can't go back to the state mandamus proceedings or the others. Yes, Your Honor. We have two alternative arguments for that. I mean, the clock ran out for him. It didn't just run out for him. It ran out because he delayed bringing his claims for substantial periods of time. Actually periods of time for two of the claims at least, which exceeded the time in Byrd. So yes, he did finally file his Randolph County habeas action, his state remedy, and pursue it. But it was not until August of 2009. But he first filed the mandamus action in the other county where he files it, he takes the appeal, and then that's the one where he fails to go to the Illinois Supreme Court. And so he makes a mistake, right? Well, it's more than just a mistake, Your Honor. First of all, the Livingston County, that only challenged his 2003 prison disciplinary decision. So it didn't relate to his 2002 decision. He actually has three separate claims here, really. Right, I know. One against the 2002, one against the 2003, and one against the 2007. Now the Livingston County one, that one, he did pursue it like he should have been pursuing under HEC. And by the way, that was years after the Balasag case. So the rule that applied to prison disciplinary decisions was well established at that time. He lost on the merits, he appealed, he lost on the merits, and then at that point he just abandoned the case. Right, no, he fails, I remember, he fails to go to the Illinois Supreme Court. But then he turns around sometime later and files the action, or collateral relief, I don't know whether you call it habeas in the state, but collateral relief regarding all three of them, and then the court won't recharacterize it as a mandamus when he realizes, oops, this is the wrong thing too, how about mandamus? Yes, but if you're looking at this time, first of all, the Livingston County action, just his mandamus action that he filed back in 2004, that just reflects for the 2002 action. He knew and could have used mandamus against that action as well. Even if you want to count that as him diligently pursuing his claim up to April 2005, when that's when the appellate court rejected his claim, the Livingston County claim. And even though he procedurally defaulted then by not continuing that appeal, it was over four years between that decision and when he refiles his other state remedy in the Randolph County action. So there's still, that's like four years and four years is a delay that far exceeds the three-year delay in the Byrd case. So that's actually, even though he did finally file an action, it was... August 2009, right? Correct. It was still many years. Now the 2007 is a closer case, but it's still over two years after the prison disciplinary decision that he filed that action. So we think on timeliness alone, he failed to satisfy the rule under Byrd that applies heck to released prisoners when they haven't diligently or haven't timely pursued their action. And we also do have the alternative argument that putting aside his timeliness, that he procedurally then defaulted it by failing to prosecute his appeal. So when he finally filed the Randolph County action, he lost, as you mentioned, because he had sought the wrong former police, used the wrong procedural vehicle. He appealed that action, but then his appeal was dismissed. Right, and then he gets caught in the switches of trying to get a transcript and he finally offers, you know, I'll just give you all my papers. And the court says, no, you know, we don't want that. And so then he goes to the Illinois Supreme Court. So he does exhaust all the way up to the Illinois Supreme Court with respect to his ability procedurally to get the merits before the courts. And the courts say, no, you know, we're not going to take the merits. Well, but Your Honor, as we argued there, the problem is that that was a procedural default. So he actually, he wasn't, even though he certainly under the Supreme Court, if his habeas action, he then filed, after that he filed his habeas action in federal court, if it had proceeded, if he had not, if it had not gone moot at that point, habeas was really unavailable because it was doomed. It was a futile because under the clear precedent, his failure, his failure. Yeah, I mean, the fact that he didn't have enough money for a transcript because this is all characterized as civil meant that there was an adequate state ground for rejecting it, which is a little troublesome in and of itself. But let's just leave that. So, so this takes us back to sort of the basics, you know, where are these courts getting this idea about heck, this court and Byrd, the other courts that have gone that way, when the rationale of the original heck plurality decision by Justice Scalia is really that there's an overlap, that you don't want to allow somebody to obtain release from prison without jumping through the hoops that the habeas corpus statute sets up, most importantly, the exhaustion of remedies hoop. Well, Your Honor, actually, the heck majority wasn't a plurality decision. There was a clear majority that was joined by the four of the concurrences under Justice Souter's concurrence, but the majority was there. And while they did recognize that the heck, no, I think you're thinking of the Spencer decision, Your Honor? No, Spencer's also split, but heck winds up getting sort of certified, if you will, in Edwards against Balasag. So I'm not saying heck isn't good law, but it's... But the heck majority, while they recognized certainly that there was an intersection here between Section 1983 and the habeas statute, it based its decision on common law principles and principles of jurisprudence, that is to ensure the finality of criminal judgments in order to avoid inconsistent judgments and rule against expanding using civil actions to clatterily attack criminal judgments, at least outside of the habeas statute. Which is all to say that there are policy reasons to use habeas corpus when somebody is seeking release. That's the whole point of habeas corpus. Tell me why this person shouldn't be released. Whereas if there are, you know, if you were disrespectful to a guard or your mail is being opened or you got bad medical care or what other sorts of things go on in prisons, those kinds of things don't cause release. They can and must be pursued under 1983. And then there's this overlap where somebody sometimes loses, you know, 30 days of good time credit and they also, you know, are unhappy with the resolution, say, of their medical care thing. So you've got the hybrid cases. And I'm not sure that the Supreme Court decisions tell you why the hybrid cases require a favorable termination. Maybe you're just blocked from receiving damages for unlawful incarceration. No, I mean, under Balasag, it applies to any kind of state judgment, sorry, any challenge to a state judgment that is affecting the duration of confinement. Exactly. That's what I'm saying. But I'm saying that there are hybrid decisions. There are lots of prisoners who will get, number one, 30 days of good time credit revoked, and number two, maybe they're moved over to the disciplinary segregation wing of the prison. Number one would affect duration. Number two affects conditions of confinement. And it's all in the same order. It is. But if they're making the challenge to the duration of their confinement, the rule applies because. But what about Mr. Whitfield? He, at least, you know, we have all of his own briefs. And it appears that he's trying to get whatever he can get. Amicus suggests that maybe he can get some things and not others. And so this entire case may not be blocked, maybe just parts of it. Yes. But, you know, he agrees, but Mr. Whitfield affirmatively agreed that his cases are blocked under HEC that he was challenging the duration of his confinement. And at his core, both through his retaliation claims and his due process claims, that he was trying to basically, he was challenging the validity of his loss of good time credits.  Because even in Justice Souter's concurrences, he recognized that the HEC rules required, because of Congress's intent, which is expressed and embodied in the habeas statute, that state prisoners use habeas in order to address those kinds of claims. And it is Congress's intent to preserve, sorry, it's important to preserve Congress's intent that such prisoners follow habeas rules, including properly exhausting their state remedies. Right. No, except that when you're not in prison anymore, you can't use habeas because you're not in custody. No, you can't anymore, but you were, for a prisoner like Mr. Whitfield, one who had habeas available and the state remedies available for years, in order to allow them to sit on their hands, to delay, for instance,  that undermines the Congressional intent that you use habeas as a state prisoner. That you follow habeas' rules in order to seek relief in federal court. That brings us back to the problem about the Mekis' broad rule, sorry, their broad exception and the implications of that exception. Well, that's why I was going to follow up and ask you, if we were to disagree with you and read Spencer the way Mekis does, or if we were to understand Byrd as more of a diligence requirement and thought further facts were necessary, what would you do with the statute of limitations? Do you think it's told during time in prison? Do you think it starts to run if remedies would have been available to you? I'm sorry, but I don't think this Court has a choice. I mean, under the Heck Bar, under the Heck decision, the case did not accrue. That was not dictum in that decision, under the Heck majority's decision. If the Heck rule applied to him while he was in prison and applied to these claims, the claim could not accrue until either he satisfies the Heck rule or under the Mekis' broad exception until his release from prison. And if Heck doesn't apply, then what happens to the statute of limitations? Well, I don't think Mekis are arguing that the Heck requirement never applied to his claims. They're saying that it stopped applying to his claims upon his release. So under the Mekis' reading of the Heck majority decision, then it would have to accrue suddenly upon his release from prison. And that's why you have the problem of stale claims. And it undermines actually the principle of ensuring the finality of judgments, which the Heck majority relied upon in creating this rule. And in addition, it also really undermines, as I mentioned before, the concurrences, justice students' concurrences, at least to the extent that he was concerned about that, sorry, that he recognized a congressional intent. What if it's not the criminal judgment that's being attacked? Suppose we're in the Edwards against Balasag world, and everybody understands the person's been convicted of whatever they were convicted. They have a sentence of some number of years. But in the prison disciplinary context, we have the hybrid claim that I was talking about, just hypothetically, you know, never mind Mr. Whitfield. Why does that undermine the finality of any criminal judgment if you're just now giving somebody a forum in which to explore claims that involve the deprivation of civil rights while in prison? Well, they did have an opportunity. They did have a forum while they were in custody in prison through habeas. They didn't take advantage of that forum. However, the problem you have is that you're providing yet a forum again after their release and that you're actually allowing them to not diligently or even to just simply sit on their hands during their entire period of custody. But you're actually, if they want to avoid habeas, you're providing an incentive for them to do that and to that way not only circumvent the HEC bar but circumvent habeas. Your Honor, I see that I'm out of time. All right. For the reasons put forth in our brief, we ask that you affirm the judgment in favor of the defendants. Thank you. Mr. Chesbrough. Three quick points and then any questions. First, we're not saying that it accrues when Mr. Whitfield is released. It accrues when the disciplinary sanctions occur, but the statute of limitations would be told because of the legal disability that under Spencer he can't sue until he's released. Second, I think it's clear that HEC isn't determinative. The Supreme Court has recognized that HEC is not any sort of holding because in Mohammed v. Close in 2006 they said it's an open question whether the HEC dictum is controlling or whether the Spencer dictum is controlling. And so I think this Court needs to decide which is the better approach. And in that vein, I would suggest the Court look at Judge Calabrese's decision in the Proventude case a few months after Byrd was decided. It's 715 F. 3rd at 63 where he says that footnote 10 in HEC was completely unnecessary to the case, the whole idea that HEC would apply to people that have been released from custody. And so he basically held for the panel that a released prisoner need not comply with HEC and that he followed Spencer. Now that was overturned on other grounds, but I think he makes a very compelling case for following Spencer. And then the final point is that if anybody qualifies under Byrd for having tried very diligently to exhaust remedies, I do think it is Mr. Whitfield. This is very different from Byrd. And I want to note in addition to the efforts he made to exhaust his remedies related to the claims in this case, during this entire period he was actually litigating other Section 1983 lawsuits about any conditions of confinement. One actually involved a trial. And so he was quite busy. And no one suggested he's a vexatious litigant. So based on his allegations, which seem colorful, it may be that he was subjected to a decade-long campaign of harassment, which occupied his resources quite fully. So I think given that situation, I think you can easily find under Byrd, if you want to apply Byrd, that he satisfies it. If the Court has any questions? I don't think so. Thank you very much. And we do appreciate your service as amicus. Thanks, of course, as well to the State. We will take the case under advisement.